

FILED & JUDGMENT ENTERED

Christine F. Ramsey

May 4 2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Ashley Austin Edwards
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>    Jose J. Martinez and Nancy E. Martinez,<br><br>    Debtors. | Case No. 24-30845<br>Chapter 7 |
| Jose J. Martinez and Nancy E. Martinez,<br><br>    Plaintiffs,<br><br>v.<br><br>Wolper Law Firm, P.A.,<br><br>    Defendant. | Adv. Proc. No. 25-03121 |

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon the Motion for Summary Judgment filed by the

Plaintiffs on February 17, 2026 (the "Motion"). [Doc. No. 10]. The Court held a hearing on the

Motion on March 26, 2026, at which Rashad Blossom appeared as counsel for the Plaintiffs and

Michael L. Martinez and Benjamin D. Rhodes appeared as counsel for the Defendant (the

"Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement and now

renders this order. For the reasons set forth below, the Court grants the Motion in part and denies

it in part.

1

## I.     BACKGROUND

Before the above captioned bankruptcy filing (the "Base Case"), Jose and Nancy Martinez (the "Plaintiffs") retained Wolper Law Firm, P.A. (the "Defendant" together with the Plaintiffs, the "Parties") to represent them in a Financial Industry Regulatory Authority ("FINRA") arbitration (the "FINRA Arbitration") against their former financial advisor, Keith D'Agostino, and his employer, AEGIS Capital Corp. (together the "Former Financial Advisor"). The FINRA Arbitration concerned approximately $730,000 in retirement funds that were allegedly mismanaged by the Plaintiffs' Former Financial Advisor through a series of high-risk and unsuitable investments, resulting in a substantial diminution of the Plaintiffs' retirement assets. The Defendant's representation of Plaintiffs was governed by a contingency fee agreement executed on March 25, 2024, pursuant to which the Defendant was entitled to one-third of any recovery obtained through the FINRA Arbitration, in addition to reimbursement of costs. Defendant initiated the FINRA Arbitration on April 5, 2024, by filing a Statement of Claim with FINRA.

The Plaintiffs, by separate bankruptcy counsel, Jack G. Lezman ("Lezman"), filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 30, 2024 ("Petition Date"). The Plaintiffs disclosed their interest in the FINRA Arbitration and representation by Defendant on Schedule A/B.[1] [Base Case, Doc. No. 1]. On October 20, 2024, at the meeting of creditors held pursuant to 11 U.S.C. § 341, the Chapter 7 Trustee, Cole Hayes (the "Trustee"), advised the Plaintiffs that any settlement of the FINRA Arbitration would require Court approval. [Base Case, Doc. No. 28].

---

[1] The FINRA Arbitration was incorrectly identified as a "lawsuit" on Schedule A/B.

During the pendency of the Base Case, the Trustee did not seek Court approval to employ the Defendant pursuant to 11 U.S.C. § 327, nor did the Trustee seek approval of the Defendant's fees under § 330. Thus, the Court did not enter any order authorizing Defendant's employment. According to the Parties, the Defendant did not receive any communication from the Trustee and continued to pursue the FINRA Arbitration post-petition. Defendant contends that it continued its efforts at the direction of the Plaintiffs. The Plaintiffs received their discharge in their Chapter 7 proceeding on January 14, 2025. [Base Case, Doc. No. 11].

The Defendant subsequently received a settlement offer of $225,000 from the Former Financial Advisor, which the Plaintiffs instructed Defendant to accept. On February 24, 2025, the Plaintiffs executed a settlement agreement resolving the FINRA Arbitration in exchange for that amount. On March 26, 2025, the Defendant disbursed $148,640 to the Plaintiffs and retained the remaining $76,360, reflecting $74,935 in attorney's fees and $1,435 in costs. The following day, Plaintiff and Debtor Nancy Martinez signed a settlement statement approving the distribution of funds (the "Settlement Proceeds").

On April 3, 2025, the Trustee contacted the Defendant for the first time to inquire about the status of the FINRA Arbitration. Upon learning that the settlement funds had been disbursed, the Trustee demanded that the Defendant turn over all settlement proceeds. The Trustee filed a Notice of Possible Dividends on April 3, 2025, and the Court entered its notice of the same the next day.[2] [Base Case, Doc. No. 13]. On April 7, 2025, the Trustee filed a Motion for Turnover seeking an order directing the Plaintiffs to remit the settlement proceeds to the Court, which the Court granted by order entered on April 21, 2025. [Base Case, Doc. No. 15, 28].

---

[2] But for the Settlement Proceeds recovered by the Defendant, the Base Case would have been a no-asset case. *See* [Base Case, Doc. No. 64].

3

Due to their noncompliance with the Order Granting Trustee's Motion for Turnover, the Plaintiffs were sanctioned in favor of the bankruptcy estate in the amount of $18,135.75. [Base Case, Doc. No. 46]. Further, in resolving the Trustee's claims against them, the Plaintiffs agreed to waive, disclaim, or release any exemption they could claim in the Settlement Proceeds. [Base Case, Doc. No. 52]. All Settlement Proceeds were subsequently returned to the bankruptcy estate. *See* [Base Case, Doc. No. 64].

Thereafter, the Defendant filed a proof of claim in the Base Case in the amount of $76,360. *See* [Base Case, Claim No. 5-1]. Defendant's proof of claim asserts alternative priority levels, including administrative expense priority, secured status, and, in the alternative, allowance as a general unsecured claim. *See id.*

The Plaintiffs filed the complaint initiating this adversary proceeding on August 29, 2025 (the "Complaint"). [Doc. No. 1]. Among other things, the Complaint objects to the Defendant's claim pursuant to 11 U.S.C. § 502. The Complaint asserts that, because the Trustee did not properly employ the Defendant, such employment was not approved by the Court pursuant to 11 U.S.C. § 327. Accordingly, the Plaintiffs contend that the Defendant's claim should be disallowed in its entirety. The Motion seeks summary judgment only as to this claim of the Complaint.

The Defendant opposes the Motion primarily on three grounds. First, the Defendant contends that, although its employment was not properly sought or approved by the Court, extraordinary circumstances exist that warrant compensation as an administrative expense. Alternatively, the Defendant asserts that its claim is secured by virtue of a charging lien pursuant to Florida law. Finally, the Defendant argues that, even if its claim is neither entitled to administrative expense priority nor secured status, it should be allowed as a general unsecured claim.

4

## II.   DISCUSSION

### a.   <u>Summary Judgment Standard</u>

Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, provides that the court may only grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard is well established, and summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive determination' of a case." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322-23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1). The party moving for summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the court construes "all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party*." United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018)). Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," while factual disputes over irrelevant or unnecessary facts are not considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In sum, summary judgment is appropriate when the evidence "is so one-sided that one party must prevail as a matter of law." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Anderson*, 477 U.S. 242 at 252).

### b.   <u>Defendant is Not Entitled to Administrative Expense Priority</u>

Whether the Defendant is entitled to an administrative expense claim turns on the Bankruptcy Code's framework governing a Chapter 7 trustee's retention of professionals and compensation from the estate. Section 327(a) authorizes a Chapter 7 trustee, "with the court's

approval," to employ attorneys, accountants, and other professionals to assist in carrying out the trustee's duties, provided those professionals are disinterested and do not hold or represent adverse interests to the estate. 11 U.S.C. § 327(a). Federal Rule of Bankruptcy Procedure 2014(a) implements this requirement by mandating that any application for employment must be made by the trustee and approved by the court before the professional may be retained. Fed. R. Bankr. P. 2014(a). Once properly employed, a professional may seek compensation under § 330(a), which permits the bankruptcy court to award "reasonable compensation for actual, necessary services" and reimbursement of "actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 503(b)(2) in turn grants administrative expense priority to compensation and reimbursement awarded under § 330(a). Absent court approval under § 327 and Rule 2014, there is no right to compensation or reimbursement under § 330. *Lamie v. U.S. Tr.*, 540 U.S. 526, 538–39 (2004); *In re EBW Laser, Inc.*, 333 B.R. 351, 356 (Bankr. M.D.N.C. 2005).

The prior-approval requirement is a strict, non-waivable condition to compensation from the estate. Courts have enforced this rule regardless of outcome, and ignorance of the requirement is not an excuse. *In re Se. Materials, Inc.*, No. 09-52606, 2010 Bankr. LEXIS 423, at *2 (Bankr. M.D.N.C. Feb. 12, 2010) ("'Generally, courts should try to hold parties to strict compliance with section 327, especially in the case of attorneys who may be properly charged with knowledge of the law'" (citation omitted)); *In re Carolina Sales Corp.*, 45 B.R. 750, 754–55 (Bankr. E.D.N.C. 1985); *In re Rennie Petroleum Corp.*, 384 B.R. 412, 415, n. 2 (Bankr. E.D. Va. 2008); *In re Johnson*, 21 B.R. 217, 218 (Bankr. D.D.C. 1982). Services rendered without authorization are not compensable even if the work benefited the estate or was agreed to by the parties, and the professional is treated as a volunteer even if they acted in good faith. *EBW Laser*, 333 B.R. at 356;

6

*In re Fountain Bay Mining Co.*, 46 B.R. 122, 124 (Bankr. W.D. Va. 1985); *In re Shirley*, 134 B.R. 940, 943 (B.A.P. 9th Cir. 1992).

The material facts are not in dispute. Defendant was retained by Plaintiffs prepetition pursuant to a contingency fee agreement and continued to prosecute the FINRA Arbitration after the Petition Date. Upon the Petition Date, the FINRA Arbitration became property of the estate pursuant to 11 U.S.C. § 541, and the Trustee became the party with sole authority to pursue it on behalf of the estate. *See* 11 U.S.C. §§ 323, 541; *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004).  Defendant admits that it had no communications with the Trustee until after it settled the FINRA Arbitration post-petition; accordingly, no authorization or ratification of Defendant's services by the Trustee could have occurred.[3] Despite having knowledge of the FINRA Arbitration's existence, the Trustee did not seek to employ Defendant under § 327, and Defendant did not obtain court approval of its employment at any time during the pendency of the Base Case.

Defendant contends that, notwithstanding the failure of the Trustee to seek court approval of Defendant's employment, extraordinary circumstances warrant after-the-fact court approval of its fees. Some courts have permitted retroactive approval where the professional makes a showing of extraordinary circumstances by (1) satisfactorily explaining the failure to obtain prior approval and (2) otherwise meeting the substantive requirements of § 327 and Rule 2014(a) (aside from

---

[3]  Defendant contended at the Hearing that the Trustee's statement at the § 341 meeting, advising the Plaintiffs that any settlement would require court approval, demonstrates that the Trustee was aware of the FINRA Arbitration and effectively acquiesced in Defendant's continued prosecution of it. The Court disagrees. The Trustee's statement was made to the Plaintiffs, not to the Defendant, and the record reflects no communication between the Trustee and Defendant at any point prior to the settlement. Moreover, the statement itself is more reasonably read as an assertion of the estate's authority over any settlement than as authorization of Defendant's ongoing services. Most fundamentally, even if the Trustee's awareness could be characterized as acquiescence, acquiescence cannot substitute for the statutory requirement of a court-approved application under § 327.

timeliness). *In re Se. Materials*, 2010 Bankr. LEXIS 423, at \*2 (citing *In re Tidewater Mem'l Hosp.*, 110 B.R. 221 (Bankr. E.D. Va. 1989); *see also Rennie Petroleum Corp.*, 384 B.R. at 416)). Other courts have found that extraordinary circumstances are present where the professional has provided a significant benefit to the estate. *In re Triangle Chems.*, 697 F.2d 1280, 1289 (5th Cir. 1983); *In re Allen*, 8 B.R. 221, 222 (Bankr. N.D. Ga. 1981).

The Fourth Circuit recently issued binding precedent on this issue in *David v. King*, 109 F.4th 653 (4th Cir. 2024), delineating the limited scope of the court's equitable discretion under § 327. In *David*, a Chapter 7 trustee obtained an order approving retention of counsel, but after conversion of the case to Chapter 11, the former Chapter 7 trustee continued to be involved without seeking renewed authorization for counsel's continued employment. *Id.* At 658. When the case later converted again and a new trustee was appointed, the prior trustee's counsel sought compensation for work performed during the intervening Chapter 11 period. *Id.* At 658-59. The Fourth Circuit denied compensation, holding that § 327(a)'s authority to retain professionals resides in the acting trustee, not a former trustee, and that § 105 cannot be used to cure the absence of prior authorization where the statutory prerequisite was never satisfied by the proper party. *Id.* at 665-66. The Fourth Circuit in *David* acknowledged the seemingly inequitable result of construing § 327 narrowly but nonetheless held that equitable principles cannot override the statute's plain meaning. *Id.* at 666.

The narrow circumstances in which equitable relief remains available following *David* is illustrated by the recent decision in *Schultz v. Martin L. Grp., P.C.*, where the court permitted retroactive approval only because a § 327(a) application had already been filed by the proper party and the sole defect was the court's failure to enter a timely order. No. 1:25-cv-1598 (LMB/IDD), 2026 LX 110921, at \*17 (E.D. Va. Apr. 21, 2026). Unlike here, the professional in *Schultz* had

8

done everything the statute required; the only missing piece was the court's own failure to enter the order. As in *David*, the defect here is not one of timing but of authority.

Even under *Tidewater Mem'l Hosp.*'s two-part extraordinary circumstance test, retroactive approval requires as a threshold matter that the retention would have been approved had it been timely filed, meaning all substantive requirements of § 327 must be satisfied, including that the application be brought by the proper party. 110 B.R. at 226. That requirement cannot be met. The Trustee never sought Defendant's employment, never directed its services, and never applied for retroactive approval. No application by Defendant can satisfy a statutory requirement vested exclusively in the estate's fiduciary, and there is accordingly nothing for this Court to approve after the fact. *See EBW Laser*, 333 B.R. at 356 (acknowledging that a court may approve retention of counsel nunc pro tunc but declining to do so where the trustee did not file a motion seeking retention nunc pro tunc). A court cannot retroactively authorize employment that the estate's fiduciary never sought to approve in the first instance, and § 105 cannot supply what the statute requires the trustee alone to initiate.

The Court acknowledges that this result is a harsh one. Defendant provided valuable services that generated the full recovery for the estate, and the Trustee had at least two opportunities to address the deficiency, by seeking approval of Defendant's employment when it became apparent that the FINRA Arbitration was being actively prosecuted on behalf of the estate, or by seeking nunc pro tunc approval following the settlement. The Trustee did neither. However, that inaction does not vest this Court with authority to grant compensation that the statute does not permit. The requirements of §§ 327 and 330 are clear, and equitable sympathy for Defendant's position cannot substitute for compliance with the Code.

### c.  **Defendant Does Not Hold a Secured Claim**

The Defendant asserts that it holds a charging lien under Florida law,[4] which it contends

gives rise to a secured claim in the settlement proceeds. Under Florida law, a charging lien is "an

equitable right to have costs and fees due an attorney for services in the suit secured to him in the

judgment or recovery in that particular suit." *Sinclair, Louis, Siegel, Heath, Nussbaum &*

*Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983). A properly perfected charging lien

may therefore operate as a secured interest in litigation or settlement proceeds.

However, a charging lien is not self-executing; it must be properly perfected before it can

be enforced. *Baker & Hostetler, LLP v. Swearingen*, 998 So. 2d 1158, 1161 (Fla. 5th DCA 2008).

To establish an enforceable charging lien, a claimant must demonstrate: (1) an express or implied

contract between attorney and client; (2) an express or implied understanding that payment would

be either dependent upon or paid from recovery; (3) either avoidance of payment or a dispute as

to fees; and (4) timely notice. *See Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986)

(citing *Sinclair*, 428 So. 2d at 1385).

Timely notice is essential. To satisfy this requirement, an attorney must either file a notice

of lien or otherwise assert the lien in the underlying proceeding before its conclusion. *Daniel*

*Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986). Generally, a charging lien must be asserted

before the action has been reduced to judgment or terminated by settlement. *Id.*; *Baker & Hostetler*,

---

[4] The contingency fee agreement designates Florida law as governing, and neither party has contested that
Florida law controls the charging lien analysis and the characterization of any resulting claim. This is
significant because two cases the Defendant relies upon, *In re Ashley* and *Wright v. New York Transit*
*Authority*, apply the charging lien law of Michigan and New York, respectively, neither of which governs
here. *See In re Ashley*, 41 B.R. 67 (Bankr. E.D. Mich. 1984); *Wright v. N.Y. Transit Auth.*, No. 18-cv-
1968 (RA), 2020 U.S. Dist. LEXIS 149525 (S.D.N.Y. Aug. 18, 2020).

998 So. 2d at 1161–62; *see Gaebe, Murphy, Mullen & Antonelli v. Bradt*, 704 So. 2d 618, 619 (Fla. 4th DCA 1997).

Here, the underlying proceeding was the FINRA Arbitration, which concluded by settlement on February 24, 2025. The undisputed record contains no evidence that the Defendant filed a notice of charging lien or otherwise provided timely notice of its intent to assert such a lien prior to the conclusion of the arbitration. In the arbitration context, the attorney must provide notice of the lien before the proceeding ends. *See, e.g., Feldman v. Davis*, 53 So. 3d 1132, 1134 (Fla. 4th DCA 2011) (in which the law firm asserted a charging lien in a FINRA arbitration prior to its conclusion). That did not occur here.

At the Hearing, counsel acknowledged that timely notice was not given but argued the sequence of events made such notice practically impossible, contending that because Defendant controlled and disbursed the settlement funds before the Trustee demanded turnover, there was no opportunity to assert the lien. That argument confirms that an essential element of a charging lien was not met. Defendant controlled the FINRA Arbitration, was aware of the impending settlement, and was in the best position to provide notice before funds were disbursed. Florida courts have held that failure to provide timely notice before a proceeding concludes results in forfeiture of the right to assert the lien. *Weiland v. Weiland*, 814 So. 2d 1252, 1253 (Fla. 4th DCA 2002). The charging lien is an equitable device designed to protect an attorney's interest in a recovery before funds are disbursed, not after. *Baker & Hostetler*, 998 So. 2d at 1161–62. By arguing that disbursement made notice impossible, counsel confirmed rather than excused the absence of the required element.

Because timely notice is a required element for perfection, the failure to provide such notice is fatal to the lien claim. The lien was therefore never perfected, no equitable charging lien attached

to the settlement proceeds, and the Defendant cannot establish secured status. Any attempt to assert a lien after the settlement would be untimely as a matter of law. Accordingly, on this record, there is no genuine dispute of material fact as to the absence of a valid charging lien. The Defendant does not hold a secured claim, and summary judgment will be entered in favor of the Plaintiffs on this issue.

### d. **Defendant Holds a Prepetition Unsecured Claim**

Although the Defendant is not entitled to administrative expense priority or secured status, the Court considers whether any portion of its claim may be allowable as a general unsecured claim. The Defendant argues that even if its administrative expense and secured claims fail, it is nonetheless entitled to a general unsecured claim, and notes that this is a surplus case in which unsecured creditors are expected to be paid in full.

While an enforceable contract allocating attorney's fees "is allowable in bankruptcy except where the Bankruptcy Code provides otherwise," the Code does provide otherwise here. *Travelers Casualty & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007). As discussed above, sections 327 and 330 establish an exclusive mechanism for compensating estate professionals for services rendered on behalf of the estate, and that mechanism conditions any right to compensation on prior court approval. The Supreme Court has made clear that a professional who is not employed under § 327 is not entitled to compensation from the estate under § 330. *Lamie v. U.S. Tr.*, 540 U.S. 526, 538–39 (2004). An attorney who renders such services without court approval is considered a volunteer and generally cannot recover compensation from the estate in any form. *In re Schupbach Invs., L.L.C.*, 808 F.3d 1215, 1219 (10th Cir. 2015) (citing *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 318 (10th Cir. 1994)); *EBW Laser*, 333 B.R. at 356 ("unapproved representation . . . generally is not compensable by the bankruptcy estate"); *see also*

12

*Shirley*, 134 B.R. 940, 943 (B.A.P. 9th Cir. 1992) (declining to permit an unapproved professional to circumvent § 327 by pursuing its claim under state law). That prohibition extends to recovery through the general claims allowance process. A professional may not sidestep the requirements of §§ 327 and 330 by recasting unapproved fees as a general unsecured claim, and the surplus nature of the case does not alter that conclusion. Any claim for compensation attributable to postpetition services is therefore disallowed.

The analysis is different for services rendered prior to the Petition Date. Prepetition claims arise independently of §§ 327 and 330. A prepetition claim for legal services is not subject to those requirements and is instead governed by applicable nonbankruptcy law and the general claims allowance framework of 11 U.S.C. § 502. The Court's denial of Defendant's administrative expense claim does not foreclose the Defendant from holding a valid prepetition claim for services rendered through the Petition Date. *See In re Jones*, No. 10-32718-WRS, 2013 Bankr. LEXIS 1589, at *11 (Bankr. M.D. Ala. Apr. 12, 2013) (denying application for compensation under § 330(a) due to failure to obtain court approval pursuant to § 327 while expressly reserving the question of whether counsel held a valid claim for services rendered through the petition date).

Under Florida principles of quantum meruit, an attorney retained under a contingency fee agreement who is discharged without cause prior to the occurrence of the contingency may recover, upon the successful occurrence of the contingency, the reasonable value of services rendered, subject to the contractual fee cap. *Rosenberg v. Levin*, 409 So. 2d 1016, 1020 (Fla. 1982). In determining reasonable value, courts consider the totality of the circumstances, including the time expended, the recovery sought, the skill required, the results obtained, and the terms of the underlying agreement. *Id.* at 1022.

The operative event for purposes of this analysis is the Petition Date. Upon filing, the FINRA Arbitration became property of the estate pursuant to 11 U.S.C. § 541, and the Trustee succeeded to sole authority to pursue it on behalf of the estate under 11 U.S.C. § 323. *See Parker*, 365 F.3d at 1272 ("Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it."). From that point forward, Defendant lacked authority to act on behalf of the estate absent employment by the Trustee under § 327. For purposes of the compensation analysis, Defendant's authorized representation therefore terminated as of the Petition Date, and any claim for the value of services rendered after that date is not recoverable as a general unsecured claim.

It is clear from the record that the Defendant performed legal services under the contingency agreement from March 25, 2024 through the September 30, 2024 Petition Date. Defendant is entitled to assert a prepetition claim in quantum meruit for the reasonable value of those services, subject to the cap imposed by the contingency fee agreement and contingent upon the occurrence of the recovery, which did ultimately occur. *See EBW Laser*, 333 B.R. at 356–57 (recognizing quantum meruit claim for discharged attorney's prepetition services under contingency fee agreement where settlement proceeds constituted a successful occurrence of the contingency, entitling attorney to reasonable value of services rendered prior to termination of his involvement). The amount of such claim, including what portion of Defendant's total services were rendered prepetition and the reasonable value of those services, present factual issues that cannot be resolved on summary judgment. Accordingly, summary judgment is denied with respect to any general unsecured claim based on prepetition services under a quantum meruit theory.

### III.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.) The Motion is **<u>GRANTED</u>** as to the Defendant's claim for administrative expense priority.

2.) The Motion is **<u>GRANTED</u>** as to the Defendant's assertion of a secured claim.

3.) The Motion is **<u>DENIED</u>** as to the Defendant's general unsecured claim for prepetition services, which remains for further proceedings within the parameters of this order.

**IT IS SO ORDERED.**

**This Order has been signed electronically.**                    **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**